# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **OJORE MULUMBA AJAMU VII,** | ) | **CASE NO. 8:05CV277** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **DOUGLAS COUNTY CORRECTIONAL** | ) | |
| **CENTER, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## INTRODUCTION

This lawsuit was filed against the Douglas County Correctional Center ("DCCC") on June 14, 2005. See Filing No. 1. The plaintiff alleges that on April 28, 2005, DCCC correctional officers Dutcher, McCoullan, and Denker became impatient and irritated with the plaintiff because he was kicking his cell door. The plaintiff alleges that these officers entered his cell and beat him severely, causing a "busted lip," facial bruises, and a facial scar. He claims the officers' use of excessive force violated his Eighth Amendment rights, and that defendant Douglas County condoned the use of excessive force, or failed to supervise or train its employees so as to avoid unconstitutional uses of force against inmates. According to the plaintiff, the incident was videotaped, and neither the videographer, nor any of the other DCCC officers present, intervened to assist the plaintiff. The plaintiff seeks damages and an order requiring DCCC to fire Dutcher, McCoullan, and Denker.

The plaintiff has filed suit against only the DCCC. The DCCC's answer denies the allegations of the plaintiff's complaint and further alleges that the plaintiff failed to state a

claim upon which relief may be granted, and failed to exhaust administrative remedies prior to filing suit. See Filing No. 29.

Pending before me is DCCC's motion for summary judgment. (Filing No. 65.) DCCC argues plaintiff's claim must be dismissed because there is no evidence that the defendant acted under color of state law or that the plaintiff suffered cruel and unusual punishment. Defendant DCCC further argues that the plaintiff's claims must be denied because he failed to comply with the exhaustion requirements set forth in the Prisoner Litigation Reform Act (hereinafter "PLRA").

The plaintiff did not respond to the summary judgment motion, and the deadline for responding has now passed. The motion is deemed submitted. As explained below, DCCC's motion for summary judgment will be granted, and judgment will be entered against the plaintiff.

**MOTION FOR SUMMARY JUDGMENT**

Standard of Review

A motion for summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). In response to the moving party's evidence, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

> Once the moving party has met its burden of showing "the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law[,] . . . the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."

Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003) (quoting Stone Motor Co. v. Gen. Motors, Corp., 293 F.3d 456, 465 (8th Cir. 2002)(internal citations omitted)).

## Statement of Undisputed Facts

In April 2004, while the plaintiff was in custody, he assaulted DCCC correctional officers Dutcher and Dave Finlayson. As to the assault on Dutcher, an information was filed in the District Court of Douglas County, Nebraska, in May of 2004, charging the plaintiff with assaulting an officer, a Class IIIA felony. Filing No. 67, ex.. 1, pp. 1-2. The Dutcher assault case was tried to a jury on March 21-22, 2005, and the plaintiff was convicted on the charge of Assault on an Officer in the Third Degree. Filing No. 67, ex. 1, p. 8. As to the assault on Finlayson, an amended information filed against the plaintiff charged him with two counts of Assault by a Confined Person. Filing No. 67, ex. 2, pp. 1-9. The Finlayson assault case was tried to a jury on April 7-8, 2005, and the plaintiff was convicted on both counts. Filing No. 67, ex. 2, p. 10.[1]

The plaintiff's complaint alleges that Dutcher physically assaulted and punched him; McCoullan threatened him with chemical spray; and Denker punched him and mocked him

---

[1] Of note, on June 28, 2005, the Douglas County District Court held a consolidated sentencing hearing on the plaintiff's convictions for assaulting Dutcher and Finalyson. The court concluded the plaintiff was a habitual criminal and sentenced him to ten years in prison on each count, each sentence to be served consecutively. Filing No. 67, ex. 1, p. 9; ex. 2, p. 11.

while he laid bleeding and injured on the floor. The plaintiff alleges that these events occurred because of the ongoing criminal trial against the plaintiff regarding his assault on Dutcher. The plaintiff contends that Dutcher should not be assigned to work in the plaintiff's area. (Filing No. 1.)

Several informational reports were prepared by the officers involved in the April 28, 2005, incident. See Filing No. 67, exs. 7-9, 11-15. These reports describe the plaintiff as combative, assaultive, threatening, and unwilling to comply with direct orders, and state that the plaintiff was forcibly placed in restraints to control him and to protect the officers and county property. On April 28, 2005, a disciplinary misconduct report was filed charging the plaintiff with terroristic threats and assaulting an officer (Filing No. 67, ex. 10), and the plaintiff was placed on a behavior watch list. Filing No. 67, ex. 16.

On May 16, 2005, the plaintiff filed three grievances related to the DCCC officers' alleged use of excessive force on April 28, 2005. Filing No. 67, exs. 3-5. The DCCC officer who investigated the three grievances reviewed the videotape of the alleged incident and issued a decision on May 23, 2005. The investigating officer concluded the plaintiff's grievances lacked merit. Filing No. 67, exs. 3-5. The plaintiff never appealed the ruling on his three grievances.

Upon admission to the DCCC, all inmates are given a copy of the Douglas County Correctional Center Inmate Rules and Regulations Handbook, which outlines the rules and regulations they must follow while incarcerated at that facility. Filing No. 67, ex. 17 (Hubbard affidavit), ¶ 8. Pursuant to section 11 of the DCCC Handbook, if an inmate does not agree with a grievance determination, he can obtain an additional grievance form and appeal the decision to the Chief Deputy of Corrections. The Chief Deputy of Corrections

must then review the grievance and issue a response. If the inmate disagrees with the Chief Deputy's response, the inmate is not precluded from seeking other remedies. However, the Handbook clearly warns that "internal remedy requests are usually required prior to submitting a complaint to an outside agency or group." (Filing No. 67, ex. 6, § 11.2 (D).)

The plaintiff signed his complaint on June 13, 2005, and his complaint was received and filed in this court on June 14, 2005. See Filing No. 1. Since the plaintiff never appealed the initial investigating officer's response to any of his three grievances filed on May 16, 2005, DCCC did not have an opportunity to address his claims and consider potential remedies prior to the filing of this lawsuit. (Filing No. 67, ex. 17 (Hubbard affidavit), ¶¶ 19-20.)

## Legal Analysis

Section 1997e (a) of the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a)(emphasis added). Pursuant to § 1997e(a), a prisoner must exhaust all administrative remedies available through the prison system before filing a lawsuit challenging prison conditions. This exhaustion requirement is mandatory; the court cannot, in its discretion, waive this requirement. Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006).

The PLRA's exhaustion requirement serves two purposes. It affords the agency an opportunity to "correct its own mistakes with respect to the programs it administers before

it is haled into federal court" while discouraging prisoners from disregarding the prison's procedures, and it promotes efficiency. Woodford, 126 S.Ct. at 2385.

> The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally allowing the initiation of a federal case. The PLRA also was intended to reduce the quantity and improve the quality of prisoner suits.

Woodford, 126 S.Ct. at 2387 (internal citations and quotation marks omitted).

The plaintiff's complaint alleges that on April 28, 2005, he was physically injured by the excessive force inflicted by DCCC corrections officers. The DCCC has an explicit and published grievance procedure for resolution of prisoner complaints. As to those grievances filed by the plaintiff, DCCC timely responded in accordance with its internal regulations. The plaintiff was notified of the grievance determination. Although the DCCC grievance procedure afforded the plaintiff an opportunity to appeal any adverse decision to the Chief Deputy of Corrections, the plaintiff never pursued this available administrative process.

Under the PLRA, an inmate must exhaust available administrative procedures before filing suit even if he is complaining of an isolated incident of excessive force and is requesting a remedy (e.g. damages or employee termination) which cannot be obtained through the prison grievance process. Foulk v. Charrier, 262 F.3d 687, 695 (8th Cir. 2001)(citing Booth v. Churner, 531 U.S. 956 (2001)). Based on the undisputed facts, the plaintiff failed to comply with the DCCC grievance process and filed a lawsuit instead. Accordingly, the court must grant defendant's motion for summary judgment, and dismiss the plaintiff's complaint with prejudice for failure to comply with the exhaustion requirement set forth in 42 U.S.C. § 1997e(a). See e.g. Woodford, 126 S.Ct. at 2384 (holding dismissal

6

of plaintiff's complaint was required where the inmate alleged the prison wrongfully prohibited his participation in special prison programs, but failed to timely comply with the California prison system's grievance process before filing his federal lawsuit); <u>Lyon v. Vande Krol</u>, 305 F.3d 806, 809 (8th Cir. 2002)(reversing a judgment in favor of the inmate where he failed to exhaust the prison grievance system before filing his lawsuit).

IT IS ORDERED that:

1. The defendant's motion for summary judgment, Filing No. 65, is granted;

2. The defendant's motion to extend the progression schedule, (Filing No. 69), and motion to compel, (Filing No. 70), are denied as moot;

3. The pretrial conference currently scheduled for January 10, 2008 at 9:30 a.m. is cancelled. The clerk is directed to send a copy of this order to Magistrate Judge Piester; and

4. Judgment will be entered in accordance with this Memorandum and Order.

DATED this 22nd day of October, 2007.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge